IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FELIX SUMMERS,

           Petitioner,

    v.

JOHN E. WETZEL, et al.,

           Respondents.

CIVIL ACTION
NO. 13-3561

## OPINION

**Slomsky, J.**                                            **November 20, 2018**

## I.    INTRODUCTION

Before the Court is the Petition of Felix Summers ("Petitioner"), a state prisoner, for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. Nos. 1, 3.) On April 30, 2018, United States Chief Magistrate Judge Linda Caracappa issued a Report and Recommendation ("R&R") recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 36.) On May 8, 2018, Petitioner filed Objections to the R&R. (Doc. No. 37.) The Court has reviewed all pertinent documents and, for reasons that follow, will approve and adopt the R&R (Doc. No. 36) in its entirety, and will deny the Petition (Doc. Nos. 1, 3).[1]

---

[1] For purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. Nos. 1, 3), the Commonwealth's Response to Petition for Writ of Habeas Corpus (Doc. No. 29), Petitioner's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus (Doc. No. 32), the Report and Recommendation of United States Chief Magistrate Judge Linda Caracappa (Doc. No. 36), Petitioner's Objections to the Report and Recommendation (Doc. No. 37), Petitioner's counsel's letter dated May 19, 2018 (Doc. No. 40), and relevant state court records.

## II. BACKGROUND

The Pennsylvania Superior Court, citing to the trial court's opinion, summarized the facts

of Petitioner's case as follows:

> On January 12, 1999, in the vicinity of 5th and Hoffman Streets, John Niles ("Niles") was killed. When police responded, Niles was lying face down and a large crowd had gathered near the crime scene. One woman on the scene indicated to the investigating officer that Charlotte Presley ("Presley") may have seen the murder. Presley became visibly upset when the police officer approached her and said that she was concerned for her safety. The officer walked Presley back to her apartment where she gave a description of an older blue sedan with three or four black males inside leaving the scene of the murder. She told the officer that she saw one man near Niles wearing a black jacket, blue jeans, and a black knit cap and holding a gun. She later positively identified the vehicle at a location where it had been abandoned. At the police station she was shown a number of photographs and identified [petitioner] as the shooter.

> On March 29, 1999, [petitioner] was on the run from the police and staying with his girlfriend, Sherrie Hewitt ("Hewitt"), at the Econo Lodge in Philadelphia. That morning, [petitioner] woke Hewitt and took her to pick up Diana Meirino ("Diana"). He wanted to use Diana to persuade Presley to answer the door since Diana was someone Presley knew. Diana refused at first, but after a long discussion and subsequent tussle, [she] agreed.

> Diana knocked on Presley's apartment door. George Fountain ("Fountain"), with whom Presley was living, answered the door and saw Diana with [petitioner] standing behind her. Diana asked to see Presley and said that Presley owed her money. Presley came to the door, and, at that point, [petitioner] moved from behind Diana and shot Presley two times in the head. Fountain called the police and later was able to pick out a photograph of [petitioner], who he recognized as the shooter.

> After the shooting, Diana and [petitioner] got into the car and drove back to West Philadelphia. [Petitioner] told Diana and Hewitt that "they did not know anything" about the shootings and that he would "kill them if they told anyone about the killing." Then [petitioner] drove Diana home and he and Hewitt returned to the Econo Lodge. Janet Meirino ("Janet") noticed that her daughter was visibly upset, and asked why, Diana told her mother what had happened. Her mother kept the information to herself until Diana Merino passed away in 2001. At that time, Janet and Hewitt went to the police.

> After Hewitt gave a statement to police, the police assisted her and her children with a relocation because she had concerns for their safety. After a period of time at the relocation site, Hewitt returned to her mother's house with a friend, Kamisha Sampayo ("Sampayo"), for dinner. After dinner, Sampayo was driving Hewitt and her children home and they were chased by one gold and one silver car.

Hewitt recognized [petitioner] as the passenger in the gold car. Eventually the women were able to flag down a police officer and the chase stopped. Hewitt was then put into protective custody. She was later released and remained under house arrest until the time of her testimony. During the period of house arrest, [petitioner], who was in custody at the Philadelphia County Prison, made contact with Hewitt by calling Hewitt's brother and having him connect to her in a three-way conversation. In these conversations, [petitioner] tried to convince Hewitt to recant her statement.

(Doc. No. 29-3 at 1-3 (citing Trial Ct. Op., 5/29/07 at 1-3).)

On November 13, 2006, after his first two trials ended in mistrials, Petitioner was found guilty at a trial by jury in the Philadelphia County Court of Common Pleas of first-degree murder, retaliation against a witness, and possession of an instrument of a crime. (Doc. No. 29-3 at 3; Doc. No. 36 at 1; Doc. No. 37-1 at 1.) At trial, several references were made to Petitioner's prior criminal acts, including to the murder of John Niles:

The Prosecutor mentioned [the murder] in his opening and closing statements, and the commonwealth also called two witnesses to testify about the circumstances of Mr. Niles' murder. Each reference had a common thread – it linked Ms. Presley's decision to serve as a witness in the Niles murder as the cause of her own death.

(Doc. No. 29-4 at 3.) Moreover, Petitioner's ex-girlfriend, Sherrie Hewett, testified at the trial about her "complicated relationship" with Petitioner and how he was "physically abusive and beat her twice on the night of the murder." (Id. at 4.) Janet Meirino also testified at trial about what her daughter, Diana Meirino, had told her about the murder of Charlotte Presley. (Doc. No. 29-3 at 3.)

On December 14, 2006, Petitioner was sentenced to life imprisonment on the first-degree murder charge, and thirty to sixty months imprisonment for retaliation against a witness. (Doc. No. 36 at 2.) After sentencing, Petitioner filed a notice of appeal to the Pennsylvania Superior Court, which the Superior Court denied on April 23, 2008. (Id. at 3.) On November 20, 2008, Petitioner's appeal to the Pennsylvania Supreme Court was denied. (Id.)

On November 19, 2009, Petitioner filed a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 et seq. (Id.) Petitioner subsequently amended his PCRA petition, and the amended petition was denied by the PCRA court without a hearing on June 10, 2011. (Id.) On June 11, 2012, the Pennsylvania Superior Court affirmed the PCRA court's denial. (Id.) On August 21, 2012, Petitioner filed a second PCRA petition seeking relief from his mandatory life imprisonment sentence in accordance with the United States Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012), which held that life sentences for juveniles are unconstitutional. (Id.)

On June 20, 2013, while his second PCRA petition was still pending, Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner's counsel subsequently revised the petition on October 4, 2013. (Doc. No. 3.) In the Petition, Petitioner raised the following arguments as summarized by the Chief Magistrate Judge:

(1) "The Superior Court of Pennsylvania unreasonably applied the rule under the Confrontation Clause set forth in Crawford v. Washington. The petitioner respectfully submits that the Superior Court committed federal constitutional error on direct appeal in ruling that a statement of Diana Meirino, who died in 2001, identifying petitioner as the murderer was admissible and not testimonial, and further erred in ruling that the statement was a declaration against interest where the declarant admitted to no prior criminal conduct and only to being merely present at the scene. […]"

(2) "Ineffective assistance of counsel in failing to demand cautionary instructions in view of multiple references to Petitioner having committed prior acts of violence."

(3) "Petitioner's life without parole sentence should be vacated under Miller v. Alabama."

(Doc. No. 36 at 4.) On January 13, 2014, this Court stayed the habeas petition pending the resolution of Petitioner's state court proceedings. (Doc. No. 10.)

4

On July 20, 2016, the Pennsylvania Superior Court vacated Petitioner's judgment of sentence and remanded his case for resentencing pursuant to Miller.[2] (Doc. No. 36 at 4.) After the Superior Court's decision, this Court referred the habeas petition to the Chief Magistrate Judge for Report and Recommendation on Petitioner's Confrontation Clause and ineffective assistance of counsel claims. (Doc. No. 19.) In her R&R, the Chief Magistrate Judge recommended the Petition be denied. (Doc. No. 36.) Petitioner filed Objections to the R&R. (Doc. No. 37.) For reasons discussed below, the Court will approve and adopt the R&R (Doc. No. 36) and will deny the Petition (Doc. Nos. 1, 3).

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. E.D. Pa. Civ. R. 72.1. Under that rule, a petitioner must "specifically identify the portions of the proposed findings,

---

[2] Petitioner's resentencing is still pending. A hearing on his resentencing is currently scheduled for March 15, 2019 before the Philadelphia County Court of Common Pleas. See Dkt. No. CP-51-CR-0101621-2002, at 39.

recommendations or report to which objection is made and the basis for such objections." <u>Savior</u>

<u>v. Superintendent of Huntingdon SCI</u>, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20,

2012). Upon review, "[a district judge] shall make a de novo determination of those portions of

the report or specified proposed findings or recommendations to which objection is made."

§ 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to

conduct an "independent review" of the entire matter. <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 255,

238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely

upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in

the exercise of sound discretion, deem[s] proper." <u>Owens v. Beard</u>, 829 F. Supp. 736, 738 (M.D.

Pa. 1993) (citing <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980)).

IV. **ANALYSIS**

As noted, Petitioner raised three claims for relief in his Petition:

(1) "The Superior Court of Pennsylvania unreasonably applied the rule under the Confrontation Clause set forth in Crawford v. Washington. The petitioner respectfully submits that the Superior Court committed federal constitutional error on direct appeal in ruling that a statement of Diana Meirino, who died in 2001, identifying petitioner as the murderer was admissible and not testimonial, and further erred in ruling that the statement was a declaration against interest where the declarant admitted to no prior criminal conduct and only to being merely present at the scene. […]"

(2) "Ineffective assistance of counsel in failing to demand cautionary instructions in view of multiple references to Petitioner having committed prior acts of violence."

(3) "Petitioner's life without parole sentence should be vacated under <u>Miller v. Alabama</u>."

(Doc. No. 36 at 4; Doc. No. 3.) In recommending that the Petition be denied, the Chief Magistrate

Judge found that Petitioner's first claim was meritless because the Superior Court reasonably

applied the rule in <u>Crawford</u> and determined that the statements admitted against him at trial were

non-testimonial and admissible; the second claim was meritless because Petitioner had not shown

6

that the Superior Court's findings as to ineffective assistance of counsel were unreasonable or contrary to clearly established law; and the third claim was moot because the Superior Court had already vacated his original sentence and remanded his case for resentencing pursuant to Miller.[3] (Doc. No. 36.)

In his Objections to the R&R, Petitioner reiterates his first two claims, as stated above, and merely reasserts the arguments made in his Petition. (Doc. No. 37; Doc. Nos. 1, 3.) First, Petitioner argues that the Superior Court unreasonably and erroneously determined that his right of confrontation under the Sixth Amendment was not violated. (Id. at 1.) Second, he argues that the Superior Court unreasonably and erroneously determined that his trial counsel was not ineffective. (Id. at 2.)

As noted, Local Rule of Civil Procedure 72.1.IV(b) provides that "[a]ny party may object to a magistrate judge's proposed findings, recommendation or report under 28 U.S.C. § 636(b)(1)(B) . . . within fourteen days after being served with a copy thereof" by filing written objections that "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." See Local R. Civ. P. 72.1.IV(b). Thus, courts in the Third Circuit have consistently held that objections that "merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review." Morgan v. Astrue, Civ. A. No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (citing Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993)) (collecting cases).

Because Petitioner's Objections simply restate the same arguments made in his Petition that have already been considered by the Chief Magistrate Judge, the Objections are not entitled

---

[3] Petitioner does not dispute that his third claim is moot. (See Doc. No. 37.)

to a de novo review.  In the interest of judicial economy, however, the Court will address each

objection in turn.

A. **Petitioner's First Objection Lacks Merit Because The Superior Court Reasonably Determined That Petitioner's Rights Under The Confrontation Clause Were Not Violated**

In Petitioner's first Objection, he contends that the Superior Court erroneously determined

that the admission of Diana Meirino's statements at trial, through the testimony of her mother,

Janet Meirino, did not violate Petitioner's right of confrontation under the Sixth Amendment.

(Doc. No. 37-1 at 3.)  In the R&R, the Chief Magistrate Judge concluded that the Superior Court

had properly applied the rules set forth by the Supreme Court in Crawford v. Washington, 541 U.S.

36 (2004) and Davis v. Washington, 547 U.S. 813 (2006) in finding that Diana Meirino's

statements were non-testimonial and therefore not barred under Crawford.  (Doc. No. 36 at 9.)

The Court agrees.

The Confrontation Clause provides a criminal defendant with the right "to be confronted

with the witnesses against him."  U.S. Const. Amend VI.  In Crawford, the Supreme Court

explained that the Confrontation Clause bars the "admission of testimonial statements of a witness

who did not appear at trial unless he was unavailable to testify, and the defendant had a prior

opportunity for cross-examination."  541 U.S. at 53-54 (emphasis added).  Consequently, the

Confrontation Clause applies only to testimonial hearsay statements.  Id.  Non-testimonial hearsay

statements are "governed solely by the rules of evidence."  United States v. Berrios, 676 F.3d 118,

126 (3d Cir. 2012).

Whether a hearsay statement is testimonial depends on its "primary purpose."  Davis, 547

U.S. at 823.  In the analysis, the R&R noted that:

> In Davis, the Supreme Court explained that the test to determine whether hearsay
> is testimonial depends on whether the statement was initially given or elicited with

the purpose of assisting a prosecution by establishing or proving a fact. Id. [at 828-29]. Another factor is the formality of the setting: "[a] 'formal station-house interrogation' . . . is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused." Ohio v. Clark, -- U.S. --, 135 S.Ct. 2173, 2180 (2015) (citation omitted). Ultimately, whether a statement is testimonial turns on "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" Id. (citation omitted). The Supreme Court has explained that statements made to individuals who are not law enforcement officers "are much less likely to be testimonial than statements to law enforcement officers." Id. at 2181.

(Doc. No. 36 at 8.)

Here, the Superior Court determined that Janet Meirino's testimony as to the statements Diana made to her about the murder of Charlotte Presley were non-testimonial in nature and not barred under Crawford. (Doc. No. 29-3 at 7.) Upon careful review of the principles set forth in Crawford, the Superior Court applied the Davis factors and concluded that Diana's hearsay statements were non-testimonial. (Id.) In coming to this conclusion, the Superior Court specifically noted the following:

> They [Diana's statements] were elicited by the declarant's mother who was merely concerned with her daughter's mental state – they were not given or elicited with any intent to assist in a prosecution, as evidenced by the fact that the witness did not even offer the statements until after her daughter had died.

(Id.) This Court agrees with the R&R that the Superior Court's application of Crawford and Davis was not "contrary to or an unreasonable application of Supreme Court precedent." (Doc. No. 36 at 9.) Petitioner's first Objection is therefore overruled.

**B.      Petitioner's Second Objection Lacks Merit Because The Superior Court Reasonably Determined That Petitioner Had Not Met The Strickland Test For Proving Ineffective Assistance Of Counsel**

In Petitioner's second Objection, he contends that the Chief Magistrate Judge erred in finding that trial counsel was not ineffective for failing to request a cautionary jury instruction on

two pieces of trial testimony: (1) the references made to the murder of John Niles in which Petitioner was implicated; and (2) Petitioner's alleged physical abuse of his girlfriend, Sherrie Hewett. (Doc. No. 37 at 2.) These claims were raised in Petitioner's PCRA petition and rejected by the PCRA court and the Superior Court. (Doc. No. 29-4.) The Superior Court held that trial counsel's failure to request a cautionary instruction on the Niles murder references did not prejudice Petitioner and that it was a strategic decision to forego a cautionary instruction on the abuse of Sherrie Hewett. (Id.) Petitioner claims the Superior Court's decision was objectively unreasonable. (Doc. No. 37 at 2.) The Court disagrees.

When addressing the merits of ineffective assistance of counsel claims on habeas review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Williams v. Taylor, 529 U.S. 362, 363 (2000). In Strickland, the United States Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must meet two requirements: (1) he must show "that counsel made errors so serious" that were "outside the wide range of professionally competent assistance"; and (2) he "must show that the deficient performance prejudiced the defense" and was "so serious as to deprive [him] a fair trial." Id. at 687-690. Notably, in reviewing ineffective assistance of counsel claims, a court must defer to counsel's tactical decisions, thereby avoiding "the distorting effects of hindsight." Strickland, 466 U.S. at 689. To that end, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citation omitted).

When a federal court reviews the state court's rejection of a petitioner's ineffective assistance of counsel claim pursuant to 28 U.S.C. § 2254, it must be "highly deferential" to the state court's decision unless that decision is contrary to clearly established federal law, or it is objectively unreasonable. Renico v. Lett, 559 U.S. 766, 773 (2010); Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 698-99 (2002). In this regard, a petitioner must demonstrate that the state court decision "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified" under Strickland. Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999)).

First, in addressing Petitioner's claim that trial counsel was ineffective for failing to request a cautionary instruction on the references to the murder of John Niles, the Superior Court reasonably concluded that Petitioner had not proven that the references prejudiced his case as required under the second prong of the Strickland test. (Doc. No. 29-4 at 6-7.) The Superior Court concluded there was no prejudice to Petitioner because trial counsel framed for the jury the proper consideration of the Niles murder during his closing argument:

> While trial counsel did not request a limiting instruction, he made abundantly clear
> to the jury, "[T]his case is not about the John Niles case. . . . The only reason you
> heard that evidence is because it's one of the elements of the charge of retaliation
> against a witness." (See N.T. Trial, 11/13/06, at 63-64.)

(Id. at 10.) The Superior Court also concluded that the lack of a cautionary instruction did not prejudice Petitioner because there was overwhelming evidence against him to support a conviction:

Assuming a limiting instruction was necessary here, we are not persuaded that the instruction would have led to a different outcome at trial. Here, the Commonwealth presented evidence from two witnesses (Janet Meirino and Sherrie Hewitt) who named Appellant as the shooter, placed him at the scene of the crime, and identified his motive. The absence of a limited instruction on a tangential matter did not create the undue prejudice required by <u>Strickland</u> and <u>Pierce</u>.

(<u>Id.</u>)

Petitioner nevertheless contends that a cautionary instruction would have changed the outcome of his trial because a cautionary instruction was given in his first two trials and his first two trials ended in mistrials. (Doc. No. 37-1 at 15.) To support this argument, Petitioner relies on the Third Circuit's decision in <u>Bey v. Superintendent Greene SCI</u>, 856 F.3d 230 (3d Cir. 2017). In <u>Bey</u>, the Third Circuit ruled in favor of the petitioner on his ineffective assistance of counsel claim, finding that he was prejudiced by trial counsel's failure to object to an incorrect jury instruction that dealt with how the jury ought to consider positive eyewitness testimony.[4] 856 F.3d at 233. In determining that petitioner had proven prejudice under <u>Strickland</u>, the Court of Appeals found it compelling evidence that the petitioner was convicted on retrial when "[a]t his first trial, nearly identical evidence resulted in a hung jury." <u>Id.</u> at 242.

---

[4] In <u>Bey</u>, defense counsel requested a special jury instruction on eyewitness testimony known under Pennsylvania law as a <u>Kloiber</u> instruction. 856 F.3d at 234. In <u>Commonwealth v. Kloiber</u>, 378 Pa. 412, 106 A.2d 820 (1954), the Pennsylvania Supreme Court instructed that:

> Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to the identification <u>need not be received with caution</u>—indeed, the cases say that "his [positive] testimony as to identity may be treated as the statement of a fact."

106 A.2d at 826-27 (emphasis added). In <u>Bey</u>, the trial judge misstated <u>Kloiber</u> and erroneously instructed the jury that such positive eyewitness testimony "may not be received with caution." 856 F.3d at 234. The Court of Appeals noted that the trial judge's incorrect charge amounted to telling jurors that "they <u>must</u> accept an identification" as opposed to "they <u>may</u> accept the testimony without reservation, but they need not do so." <u>Id.</u> at 235 (emphasis in original).

The difference between Bey and this case, however, is that the prosecution in Bey almost exclusively relied on the testimony of a single eyewitness to the crime, Officer Taylor, to prove its case. As the Third Circuit noted, "Taylor's identification was the cornerstone of the prosecution's case." Id. at 243. The Third Circuit concluded that the petitioner had been prejudiced by the erroneous jury charge "in light of the importance of Officer Taylor's eyewitness testimony . . . and the fact that Bey's previous trial resulted in a hung jury." Id. The hung jury on its own was not enough to establish prejudice.

Here, unlike in Bey, the prosecution's case against Petitioner did not hinge on the testimony of one eyewitness. As the Superior Court noted, the evidence against Petitioner included "two witnesses (Janet Meirino and Sherrie Hewitt) who named [Petitioner] as the shooter, placed him at the scene of the crime, and identified his motive." (Doc. No. 29-4 at 10.) The Superior Court appropriately concluded, therefore, that Petitioner had not shown that a cautionary instruction on the Niles murder references accounted for the difference in outcome between his first two mistrials and his third trial that resulted in a conviction. (Doc. No. 36 at 15.)

Next, with respect to the testimony referencing Petitioner's abuse of Sherrie Hewett, the Superior Court reasonably found that trial counsel's failure to request a cautionary instruction was a matter of trial strategy, not ineffective assistance. (Id. at 11.) The Superior Court concluded the following:

> Here, trial counsel appears to have foregone a limiting instruction as a matter of trial strategy. Ms. Hewett's relationship with Appellant was complicated to say the least; and counsel presented Ms. Hewett as a jealous ex-girlfriend, who told lies about Appellant because she was upset with him. As far as Ms. Hewett's testimony that Appellant abused her and she feared retribution from him, trial counsel claimed it was a complete fabrication, and pointed to Ms. Hewett's decision to visit Appellant in prison forty times, get a tattoo bearing his name, and bring her children around him as proof of her lies.

(Id.) Accordingly, the Superior Court determined that counsel's decision not to request a cautionary instruction was a strategic one since requesting a limiting instruction "would have been inconsistent with defense counsel's theme that Ms. Hewett gave false testimony." (Id.)

The Superior Court's resolution of Petitioner's claim with respect to the Hewett references was reasonable and in accordance with federal law. As noted, counsel cannot be deemed ineffective when the challenged action "might be considered sound trial strategy." Strickland, 466 U.S. at 689. As the Superior Court found, trial counsel's defense "theme" with respect to Hewett was to paint her as a lying, jealous ex-girlfriend whose testimony could not be trusted. (Doc. No. 29-4 at 11.) Requesting a cautionary instruction as to Hewett's testimony would have undermined trial counsel's theme of portraying her as a liar. (Id.) Petitioner has presented no evidence to undermine trial counsel's strategy in this regard. As such, the Superior Court reasonably concluded that trial counsel's failure to request a cautionary instruction for Petitioner's alleged abuse of Sherrie Hewett did not render his counsel's assistance ineffective.

Petitioner's claim for ineffective assistance of counsel does not meet the doubly deferential standard as required under 28 U.S.C. § 2254(d). The Superior Court's conclusion that it was not ineffective assistance of counsel for trial counsel to fail to request a cautionary instruction on the references to the murder of John Niles and Petitioner's abuse of Sherrie Hewett was not "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner's second objection lacks merit and is therefore overruled.

V. **CONCLUSION**

For the foregoing reasons, the Court will adopt Chief Magistrate Judge Caracappa's Report and Recommendation (Doc. No. 36) and will deny Petitioner's Petition for Writ of Habeas Corpus (Doc. Nos. 1, 3). An appropriate Order follows.